IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez

Civil Action No. 19-cv-2024-WJM-KMT

DAVID ZIRPOLO,
DAVID BANKS,
DEMETRIUS HARPER,
CLINTON STEWART, and
COLORADO SPRINGS FELLOWSHIP CHURCH,

    Plaintiffs,

v.

E. WILLIAMS, Warden of FCI Florence,
HUGH HIRWITZ, Acting Director of U.S. Bureau of Prisons,
N. MORSE, Administrator of the Federal Prison Camp, FCI Florence,
in their individual and official capacities,

    Defendants.

---

**ORDER GRANTING DEFENDANTS' EARLY PARTIAL MOTION FOR SUMMARY JUDGMENT AND MOTION TO DISMISS**

---

This matter is before the Court on Defendants E. Williams, Hugh Hirwitz, and N. Morse's ("Defendants'") Early Partial Motion for Summary Judgment (ECF No. 37) and Motion to Dismiss (ECF No. 36) (the "Motions"). For the reasons set forth below, the Motions are granted.

## I. BACKGROUND

Plaintiffs David Zirpolo, David Banks, Demetrius Harper, and Clinton Stewart are inmates of FCI Florence's minimum security prison camp, and members of Plaintiff Colorado Springs Fellowship Church ("Church"). The individual Plaintiffs allege that they have been denied access to Church DVDs in violation of their rights under the First

Amendment, the Religious Freedom Restoration Act ("RFRA"), and the Colorado Constitution. (ECF No. 3.) The Church brings related claims. (*Id.*)

On November 4, 2019, Defendants filed the instant Motions. (ECF Nos. 36, 37.) Defendants seek judgment on certain claims on the basis that Plaintiffs failed to exhaust their administrative remedies before bringing suit, and on other claims because they are time-barred. (ECF No. 37.) Defendants seek dismissal of the remaining claims variously under Rules 12(b)(1), 12(b)(2), and 12(b)(6). (ECF No. 36.) On December 23, 2019, Plaintiffs filed their Responses to the Motions (ECF Nos. 46, 47), and on January 10, 2020, Defendants filed their Replies (ECF Nos. 54, 55).

## II.  LEGAL STANDARDS

**A.      Summary Judgment**

Summary judgment is appropriate only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Henderson v. Inter-Chem Coal Co., Inc.*, 41 F.3d 567, 569 (10th Cir. 1994). Whether there is a genuine dispute as to a material fact depends upon whether the evidence presents a sufficient disagreement to require submission to a jury or, conversely, is so one-sided that one party must prevail as a matter of law. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248–49 (1986); *Stone v. Autoliv ASP, Inc.*, 210 F.3d 1132 (10th Cir. 2000). The Court must resolve factual ambiguities against the moving party, thus favoring the right to a trial. *Houston v. Nat'l Gen. Ins. Co.*, 817 F.2d 83, 85 (10th Cir. 1987).

**B.     Rule 12(b)(1) Motion to Dismiss**

The purpose of a motion to dismiss pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure is to test whether the Court has subject-matter jurisdiction to properly hear the case before it.  It may take one of two forms: a facial attack or a factual attack.  When reviewing a facial attack on a complaint pursuant to Rule 12(b)(1), the Court accepts the allegations of the complaint as true.  *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995).  When reviewing a factual attack on a complaint supported by affidavits and other documents, the Court makes its own factual findings and need not convert the motion to one brought pursuant to Rule 56.  *Id*. at 1003.

**C.     Rule 12(b)(2) Motion to Dismiss**

The purpose of a motion to dismiss under Rule 12(b)(2) is to determine whether the Court has personal jurisdiction over a defendant.  The plaintiff bears the burden of establishing personal jurisdiction, and may satisfy this burden by making a *prima facie* showing that personal jurisdiction over the defendants obtains.  *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008).  If the presence or absence of personal jurisdiction can be established by reference to the complaint, the Court need not look further.  *Id*.  The plaintiff, however, may also make this *prima facie* showing by putting forth evidence that, if proven to be true, would support jurisdiction over the defendant.  *Id*.  "[A]ny factual disputes in the parties' affidavits must be resolved in plaintiff's favor."  *Id*.

**D.     Rule 12(b)(6) Motion to Dismiss**

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a

cause of action for "failure to state a claim upon which relief can be granted." The 12(b)(6) standard requires the Court to "assume the truth of the plaintiff's well-pleaded factual allegations and view them in the light most favorable to the plaintiff." *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007). In ruling on such a motion, the dispositive inquiry is "whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Granting a motion to dismiss "is a harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of justice." *Dias v. City & Cnty. of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009) (internal quotation marks omitted). "Thus, 'a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely.'" *Id.* (quoting *Twombly*, 550 U.S. at 556).

### III.  ANALYSIS

**A.    Defendants' Early Partial Motion for Summary Judgment**

    1.    <u>Administrative Exhaustion</u>

Defendants contend that Plaintiffs Zirpolo, Banks, Harper, and Stewart failed to exhaust their administrative remedies before filing suit, and the Court agrees.

The Prison Litigation Reform Act ("PLRA") requires prisoners to exhaust the administrative remedies available to them before challenging conditions of confinement in federal court. 42 U.S.C. § 1997e(a). "[A] court may not excuse a failure to exhaust, even to take [special] circumstances into account." *Ross v. Blake*, 136 S. Ct. 1850,

1856–57 (2016).  Defendants bear the burden of establishing that Plaintiffs have failed to exhaust their administrative remedies.  *Jones v. Bock*, 549 U.S. 199, 216 (2007).

A person in custody of the U.S. Bureau of Prisons ("BOP") must comply with BOP's administrative remedy program as set forth in 28 C.F.R. §§ 542.10 *et seq.*  *See Garza v. Davis*, 596 F.3d 1198, 1204 (10th Cir. 2010).  BOP regulations first require that a prisoner seek informal resolution of his or her grievance with prison officials.  28 C.F.R. § 542.13.  Assuming that this does not resolve the issue, the prisoner then must submit "a formal written Administrative Remedy Request." *Id.* § 542.14.  The prisoner must subsequently appeal an adverse decision to the Regional Director, and then to the Central Office.  *Id.* § 542.15.

While it appears that Plaintiffs made an effort to comply with BOP's administrative remedy program, it is clear to the Court that Plaintiffs ultimately did not satisfy their obligations to exhaust those remedies.  Because "a court may not excuse a failure to exhaust," Defendants are entitled to judgment on all of Zirpolo, Banks, Harper, Stewart's claims.  *Ross*, 136 S. Ct. at 1856–57.

The record reflects that Zirpolo filed a request for informal resolution of his grievance regarding the availability of Church DVDs on July 26, 2018.  (ECF No. 47-1 at 3.)  He proceeded to file a formal administrative remedy request on August 8, 2018.  (*Id.* at 1.)  Zirpolo's formal request was denied on August 23, 2018, on the basis that Zirpolo had failed to "provide a date in which the event, leading to [his] request, occurred."  (*Id.* at 6.)  The rejection notice also directed Zirpolo to "resubmit [his] request in proper form within 5 days of the date of this rejection notice."  (*Id.* at 6.)

However, instead of resubmitting his request for administrative remedy to the prison as directed, it appears that on August 30, 2018, Zirpolo appealed the rejection to BOP's North Central Regional Office. (*Id.* at 5.) The appeal was denied, and the rejection notice states that Zirpolo "must first file a [proper administrative remedy] request through the institution for the warden's review and response before filing an appeal at this level." (*Id.* at 8.) Again, instead of starting over and resubmitting his request to the warden, Zirpolo appears to have appealed the Regional Office's rejection to the Central Office on September 20, 2018. (*Id.* at 2.) Unsurprisingly, Zirpolo received another rejection notice from the Central Office, which parrots the rejection notice sent by the Regional Office. (*Id.* at 7.) The record tells the same story as to Banks, Harper, and Stewart's efforts to exhaust their administrative remedies. (*See* ECF No. 3-2.)

On this record, the Court concludes there to be no genuine dispute that Plaintiffs failed to meet the exhaustion requirement set forth in 42 U.S.C. § 1997e(a) prior to bringing the claims asserted in this lawsuit. In response to the filing of their initial formal requests, BOP told Plaintiffs that sufficient information had not been provided to enable prison officials to investigate their grievances; Plaintiffs were further instructed that, in order to remedy this defect, Plaintiffs would need to resubmit their formal requests to prison officials and specify dates on which the events giving rise to the grievances occurred. Plaintiffs have offered nothing in evidence to suggest that they did so, and accordingly, there is no genuine dispute that Plaintiffs have failed to properly exhaust their administrative remedies. *See Jones*, 549 U.S. at 218 ("[T]o properly exhaust

administrative remedies prisoners must complete the administrative review process in accordance with the applicable procedural rules."); *Hinton v. Bowers*, 458 F. App'x 755, 756 (10th Cir. 2012) ("[Plaintiff] never appropriately refiled any of these grievances, and this is enough to bar his claims under the PLRA."); *Smith v. Fed. Bureau of Prisons Dir.*, 406 F. App'x 578, 581 (3d Cir. 2011) (same).  Defendants will be granted judgment on all claims brought by Banks, Harper, Stewart, and Zirpolo (claims 1–3, 6, and 8–10, as numbered in Plaintiffs' Amended Complaint (ECF No. 3)).

      2.    <u>Statute of Limitations</u>

Defendants further seek judgment on the Church's First Amendment claims against Defendants in their official capacities, arising out of Defendants' failure to provide the individual Plaintiffs access with Church videos "in or around 2013," on the basis that such claims are barred by the applicable statute of limitations: "[E]very civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues."  28 U.S.C. § 2401(a).

"A claim against [the] United States first accrues on the date when all events have occurred which fix the liability of the Government and entitle the claimant to institute an action."  *Ute Distrib. Corp. v. Sec'y of Int. of U.S.*, 584 F.3d 1275, 1282 (10th Cir. 2009); *see also Colo. Dep't of Pub. Health & Env't, Hazardous Materials & Waste Mgmt. Div. v. United States*, 381 F. Supp. 3d 1300, 1315 (D. Colo. 2019) ("[C]laims subject to 28 U.S.C. § 2401(a) begin to run when the claim *first* accrues, not when Plaintiff knew or should have known about it." (emphasis in original)); *but see Wild Horse Observers Ass'n, Inc. v. Jewell*, 550 F. App'x 638, 640 (10th Cir. 2013)

(indicating that, under § 2401(a), a cause of action does not accrue until the claimant knows or should know the factual basis for it).

Defendants have proffered evidence which establishes that these claims accrued more than six years before the instant suit was filed: Plaintiff Stewart sought an administrative remedy in March 2013 regarding the inability to access DVDs the Church had sent to the prison camp.  (ECF No. 37-2 at 32.)  Because this lawsuit was not filed until July 2019 (ECF No. 1), more than six years after Stewart's initial administrative filing, Defendants have met their initial burden of establishing that no genuine fact issue exists as to whether the Church's First Amendment claims arising in 2013 are time-barred.

The Church offers no evidence in rebuttal, but it does argue that, under the "continuing violations doctrine," these claims are properly considered as having accrued after 2013.  (ECF No. 46 at 9–10.)  The Church contends that, because the inmate Plaintiffs' inability to access Church DVDs has been a continuing issue from 2013 until at least the time suit was filed, "the actions of the BOP here [constitute] one continuous related series of events clearly subject to the tolling provisions as set forth in the case law."  (*Id.* at 10.)

The Court disagrees with the Church's assertion that the continuing violations doctrine saves its otherwise untimely claims.  "[T]he continuing violation doctrine is premised on the equitable notion that the statute of limitations should not begin to run until a reasonable person would be aware that his or her rights have been violated." *Davidson v. Am. Online, Inc.*, 337 F.3d 1179, 1184 (10th Cir. 2003).  Thus, the doctrine

"cannot be employed where the plaintiff's injury is definite and discoverable and nothing prevented plaintiff from coming forward to seek redress." *Ute*, 584 F.3d at 1283 (internal quotation marks omitted). The Church offers no legitimate reasons or evidence from which the Court could infer that they were reasonably unaware of the basis of these claims at the time they accrued. Accordingly, no genuine issue of fact exists as to whether the Church's First Amendment claims arising in 2013 are time-barred, and Defendants are entitled to judgment on those claims.

**B.     Defendants' Motion to Dismiss**

Because the Court will grant Defendants' Partial Motion for Summary Judgment, the only remaining claims in this lawsuit are (1) the Church's RFRA claim arising out of Defendants' failure to allow Plaintiffs access to Church DVDs that were sent in 2013; (2) the Church's First Amendment and RFRA claims against Defendants in their individual and official capacities, arising out of Defendants' failure to allow Plaintiffs access to Church DVDs that were sent in December 2017; (3) the Church's *Bivens* claims; and (4) the Church's state law claims.

1.     <u>The Church's RFRA Claim Arising in 2013</u>

Defendants seek dismissal of the Church's RFRA claim arising in 2013 on the basis that it is time-barred under 28 U.S.C. § 1658. A statute of limitations defense can be a basis for dismissal under Rule 12(b)(6) "when the dates given in the complaint make clear that the right sued upon has been extinguished." *Sierra Club v. Okla. Gas & Elec. Co.*, 816 F.3d 666, 671 (10th Cir. 2016).

RFRA is subject to a four-year statute of limitations. *See* 28 U.S.C. § 1658(a);

*Standing Rock Sioux Tribe v. U.S. Army Corps of Eng'rs*, 239 F. Supp. 3d 77, 84 (D.D.C. 2017); *Jama v. INS*, 343 F. Supp. 2d 338, 365 (D.N.J. 20004). Because Plaintiffs did not file this lawsuit until July 2019 (ECF No. 1), it is clear from the face of the complaint that the Church's RFRA claim arising in 2013 is time-barred. *See Pfeil v. Lampert*, 11 F. Supp. 3d 1099, 1107 (D. Wyo. 2014); *Congregation Adas Yereim v. City of New York*, 673 F. Supp. 2d 94, 107 (E.D.N.Y. 2009). This claim will be dismissed with prejudice.

    2.    <u>The Church's RFRA and First Amendment Claims, Arising in 2017, Against Defendants in their Individual Capacities</u>

As to the Church's RFRA claim against Defendants in their individual capacities, Defendants argue that they are entitled to qualified immunity, and the Court agrees.

In order to overcome the doctrine of qualified immunity the Church must allege, *inter alia,* that Defendants personally violated a clearly established right. *See Pahls v. Thomas*, 718 F.3d 1210, 1227 (10th Cir. 2013). But the Church fails to allege *any* specific conduct—relating to Church DVDs or otherwise—on the part of any of the three Defendants. It repeatedly asserts that Defendants "den[ied] [Plaintiffs] access to" the DVDs (*see, e.g.*, ECF No. 3 at 30, ¶ 142), but this statement is far too vague and conclusory for the Court to plausibly infer that any Defendant, personally, had anything to do with Plaintiffs being unable to access the Church's 2017 Christmas DVD.

Indeed, the only BOP officials about whom the Church does make specific allegations are the prison camp's chaplain and former warden of FCI Florence, John Oliver, neither of whom are parties to this litigation. The Church fails to allege that any Defendant personally participated in a clearly established violation of RFRA, and as

such, Defendants' Motion to Dismiss will be granted with respect to these claims. They will however be dismissed without prejudice.

### 3. The Church's RFRA Claims, Arising in 2017, Against Defendants in their Official Capacities

Defendants further seek dismissal of the Church's claims against Defendants in their official capacities, arising in 2017. The Court treats these claims as if they were brought against BOP itself. *See Kentucky v. Graham*, 473 U.S. 159, 165 (1985).

RFRA provides that a "[g]overnment shall not substantially burden a person's exercise of religion," unless such burden "is in furtherance of a compelling governmental interest" and "is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. §§ 2000bb-1(a), (b); *see also id.* § 2000cc-1(a) (generally prohibiting a government from imposing "a substantial burden on the religious exercise of a person residing in or confined to an institution"). To succeed on a RFRA claim, a claimant must establish that he or she "wishes to engage in (1) a religious exercise (2) motivated by a sincerely held belief, which exercise (3) is subject to a substantial burden imposed by the government." *Abdulhaseeb v. Calbone*, 600 F.3d 1301, 1312–13 (10th Cir. 2010); *Hobby Lobby Stores, Inc. v. Sebelius*, 723 F.3d 1114, 1140 (10th Cir. 2013) (en banc). "The practice burdened need not be central to the adherent's belief system, but the adherent must have an honest belief that the practice is important to his free exercise of religion." *Abdulhaseeb*, 600 F.3d at 1316 (internal quotation marks omitted).

The Court concludes that the Church has failed to state a RFRA claim arising out of Defendants' failure to allow the individual Plaintiffs in this action to view the Church's

2017 DVD.  The Church fails to allege facts from which the Court could plausibly conclude that prohibiting access to the DVD constitutes a substantial burden on *the Church*'s exercise of its religion.  Indeed, the operative complaint fails to articulate any particular religious belief on the part of the Church that Defendants have burdened. Nor can the Court conclude, on these bare and largely conclusory allegations, that the Church's ability to provide DVDs of its Christmas service to incarcerated members is sufficiently "important to [its] free exercise of religion."  *Id.* at 1316 (internal quotation marks omitted).  As such, Defendants' Motion to Dismiss will be granted as to the Church's RFRA claim arising in 2017, and that claim will be dismissed without prejudice.

    4.    <u>Plaintiffs' *Bivens* Claims</u>

Defendants argue that the Church has failed to state a claim under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), and the Court agrees.

In *Bivens*, the Supreme Court held that an implied private right of action for damages exists for a Fourth Amendment unlawful search and seizure claim against federal officials.  *Id.*  The Supreme Court, however, has since made clear that "expanding the *Bivens* remedy is [ ] a disfavored judicial activity."  *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1857 (2017) (internal quotation marks omitted).  Indeed, for over thirty years, the Court "has consistently refused to extend *Bivens* to any new context or new category of defendants."  *Id.* (internal quotation marks omitted).

"If the case is different in a meaningful way from previous *Bivens* cases decided

by [the Supreme Court], then the context is new." *Id.* at 1859. In such new contexts, "a *Bivens* remedy will not be available if there are special factors counseling hesitation in the absence of affirmative action by Congress." *Id.* (internal quotation marks omitted). Because the Supreme Court has not recognized a *Bivens* remedy for a First Amendment violation, the facts alleged and the claims brought by the Church present a new context. Accordingly, the Court examines whether there are special factors militating against judicial creation of an implied right of action against Defendants in this case. *See id*. The Court concludes that such factors are present, and therefore that allowing a *Bivens* claim in this case would be inappropriate.

"[T]he existence of alternative remedies usually precludes a court from authorizing a *Bivens* action." *Id.* at 1865. The Court notes that prospective relief is available to the Church, as the harm it alleges apparently is ongoing. Additionally, the Church is entitled to seek relief under RFRA or the Religious Land Use and Institutionalized Persons Act, claims which it has pursued in this case.

Moreover, "legislative action suggesting that Congress does not want a damages remedy is itself a factor counseling hesitation." *Id.* at 1865. In the context of prisoners seeking *Bivens* remedies, the Supreme Court has noted the significance of the PLRA:

> [I]t seems clear that Congress had specific occasion to consider the matter of prisoner abuse and to consider the proper way to remedy those wrongs. . . . [T]he Act itself does not provide for a standalone damages remedy against federal jailers. It could be argued that this suggests Congress chose not to extend the *Carlson*[1] damages

---

[1] In *Carlson v. Green*, 446 U.S. 14 (1980), the Supreme Court allowed the plaintiff, the estate of a deceased federal prisoner, to use the *Bivens* remedy to vindicate the deceased's Eight Amendment right against cruel and unusual punishment.

> remedy to cases involving other types of prisoner mistreatment.

*Id.* at 1865.

Other than asserting that the context for its claims is not new, the Church does not endeavor to explain why a *Bivens* remedy would be appropriate here.  Because there are "factors counseling hesitation" as to extending the *Bivens* remedy in this case, the Court will grant Defendants' Motion to Dismiss as to the Church's *Bivens* claims.  Those claims will be dismissed with prejudice.

      5.      <u>Plaintiffs' State Law Claims</u>

Defendants further argue that the Church has failed to state a claim under the Colorado Constitution, and the Court again agrees.

Under the Supremacy Clause of the U.S. Constitution, art. VI, § 2, "the activities of the Federal Government are free from regulation by any state."  *Hancock v. Train*, 426 U.S. 167, 179 (1976).  Absent its express consent, states cannot force the federal government to comply with state law.  *See id.*; *see also id.* at 198–99 (state cannot require federal facility to obtain permit otherwise mandated by state law); *Olmstead Citizens for a Better Community v. United States*, 606 F. Supp. 964, 977 (D. Minn. 1985) (BOP facilities not subject to zoning restrictions); *Barden v. Keohane*, 921 F.2d 476, 478 n.4 (3d Cir. 1990) (BOP not bound to follow state court orders).  The Church does not contend that the federal government has consented to state regulation of BOP, and the Court in any event does not believe that such consent has been given.  Accordingly, Defendants' Motion to Dismiss will be granted as to the Church's state law claims, and those claims will be dismissed with prejudice.

## IV.  CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1. Defendants' Early Partial Motion for Summary Judgment (ECF No. 37) is GRANTED;

2. Judgment will enter in favor of Defendants and against Plaintiffs Zirpolo, Banks, Harper, and Stewart on all claims asserted by these Plaintiffs, and these individuals are dismissed from this action;

3. Defendants' Motion to Dismiss (ECF No. 36) is GRANTED;

    a. The Church's RFRA and First Amendment claims arising in 2017 against Defendants in their individual capacities, and the Church's RFRA and First Amendment claims arising in 2017 against Defendants in their official capacities are DISMISSED WITHOUT PREJUDICE;

    b. The Church's RFRA claim arising in 2013, the Church's *Bivens* claim, and the Church's state law claims are DISMISSED WITH PREJUDICE; and

5. The Church is GRANTED LEAVE to amend its complaint ONLY as to those claims described in ¶ 3(a) immediately above by no later than **July 3, 2020.**  If the Church does not timely amend, the dismissal of these claims will be converted to one with prejudice and final judgment will enter at that time.

15

Dated this 11th day of June, 2020.

BY THE COURT:

_____
William J. Martinez
United States District Judge