IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez

Civil Action No. 19-cv-2024-WJM-KMT

COLORADO SPRINGS FELLOWSHIP CHURCH,

    Plaintiff,

v.

E. WILLIAMS, Warden of FCI Florence,
HUGH HURWITZ, Acting Director of U.S. Bureau of Prisons,
N. MORSE, Administrator of the Federal Prison Camp, FCI Florence,
JASON HENDERSON, and
JOHN OLIVER, in their individual and official capacities,

    Defendants.

## ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

This matter is before the Court on Defendants E. Williams, Hugh Hurwitz, N. Morse, Jason Henderson, and John Oliver's (collectively, "Defendants") Motion to Dismiss (ECF No. 73) and Plaintiff Colorado Springs Fellowship Church's (the "Church") Motion to Supplement (ECF No. 83). For the following reasons, the Motion to Supplement is granted, and the Motion to Dismiss is granted.

### I. BACKGROUND[1]

This action arises out of prison officials' alleged failure to provide a DVD recording of a church service to inmates at FPC Florence, a facility of the federal Bureau of Prisons ("BOP"). (ECF No. 57.) Specifically, the Church alleges that FPC

---

[1] The following facts are taken from the Church's Second Amended Complaint, which the Court assumes are true for the purpose of resolving the Motion to Dismiss. *See Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).

Florence officials, acting pursuant to a BOP policy which prohibits the donation of religious items directly to inmates for their personal possession, prevented it from donating a DVD of its 2017 Christmas Eve service to particular inmates who were members of the Church. (*Id.* ¶¶ 83–115.) The Church alleges that this prohibition substantially burdens the exercise of its religious beliefs in violation of the First Amendment to the United States Constitution and the Religious Freedom Restoration Act ("RFRA"). (*Id.* ¶¶ 83–115.)

The Church and other since-dismissed plaintiffs filed their initial Complaint on July 13, 2019. (ECF No. 1.) They filed an Amended Complaint on the same day. (ECF No. 3.) On November 4, 2019, Defendants filed their initial Motion to Dismiss and Motion for Partial Summary Judgment. (ECF Nos. 36 & 37). On June 11, 2020, the Court granted both motions and dismissed the Amended Complaint. (ECF No. 56.) The Court granted the Church leave to amend to bring First Amendment and RFRA claims to the extent they were based on the 2017 denial of the DVD. (*Id.* at 15.) The Church filed its Second Amended Complaint on July 2, 2020. (ECF No. 57.)

Defendants filed the instant Motion to Dismiss on September 30, 2020, seeking dismissal of the Second Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), and 12(b)(6). (ECF No. 73.) The Church responded on October 30, 2020 and Defendants replied on November 13, 2020. (ECF Nos. 80 & 82.)

The Church filed its Motion to Supplement on December 8, 2020. (ECF No. 83.) Defendants responded on December 8, 2020, and the Church replied on the same day. (ECF Nos. 84 & 85.) The Church subsequently filed five Notices of Supplemental

Authority between December 10, 2020 and April 11, 2021. (ECF Nos. 86, 87, 88, 89 & 90.)

## II. LEGAL STANDARD

### A.     Rule 12(b)(1) Motion to Dismiss

The purpose of a motion to dismiss pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure is to test whether the Court has subject-matter jurisdiction to properly hear the case before it. It may take one of two forms: a facial attack or a factual attack. When reviewing a facial attack on a complaint pursuant to Rule 12(b)(1), the Court accepts the allegations of the complaint as true. *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995). When reviewing a factual attack on a complaint supported by affidavits and other documents, the Court makes its own factual findings and need not convert the motion to one brought pursuant to Rule 56. *Id.* at 1003.

### B.     Rule 12(b)(2) Motion to Dismiss

The purpose of a motion to dismiss under Rule 12(b)(2) is to determine whether the Court has personal jurisdiction over a defendant. The plaintiff bears the burden of establishing personal jurisdiction, and may satisfy this burden by making a *prima facie* showing that personal jurisdiction over the defendants obtains. *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008). If the presence or absence of personal jurisdiction can be established by reference to the complaint, the Court need not look further. *Id.* The plaintiff, however, may also make this *prima facie* showing by putting forth evidence that, if proven to be true, would support jurisdiction over the defendant. *Id.* "[A]ny factual disputes in the parties' affidavits must be resolved in plaintiff's favor." *Id.*

### C. Rule 12(b)(6) Motion to Dismiss

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a cause of action for "failure to state a claim upon which relief can be granted." The 12(b)(6) standard requires the Court to "assume the truth of the plaintiff's well-pleaded factual allegations and view them in the light most favorable to the plaintiff." *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007). In ruling on such a motion, the dispositive inquiry is "whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Granting a motion to dismiss "is a harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of justice." *Dias v. City & Cnty. of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009) (internal quotation marks omitted). "Thus, 'a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely.'" *Id.* (quoting *Twombly*, 550 U.S. at 556).

### III. ANALYSIS

### A. Motion to Supplement

The Church filed a Motion to Supplement, seeking to provide additional authority supporting its claims. (ECF No. 83.) The Motion to Supplement is granted for good cause shown. The Court considers the authorities submitted by the Church in this filing in its ruling on Defendants' Motion to Dismiss.

**B.     First Amendment Claims**

The Church brings claims pursuant to the First Amendment for violation of the Free Speech, Free Exercise, and Establishment Clauses.  (ECF No. 57 ¶¶ 84–105.) Defendants argue, *inter alia*, that the Church has failed to plausibly allege a First Amendment violation and that these claims must be dismissed.  (ECF No. 73 at 16–23.)

   i.      *Free Exercise and Free Speech Claim*

In its prior Order, the Court found that the Church "fail[ed] to allege facts from which the Court could plausibly conclude that prohibiting access to the DVD constitutes a substantial burden on *the Church*'s exercise of its religion" and therefore dismissed the free exercise and free speech claim.  (ECF No. 56 at 11–12 (emphasis in original).) The allegations in the Second Amended Complaint mirror those in the Church's Amended Complaint.  (*See* ECF No. 3 ¶ 106.)  Specifically, the Church alleges, as it did in its earlier Amended Complaint, that Defendants' withholding of the DVD from the inmates infringes on its interest in "teaching, preaching, and proselytizing" to its members.  (ECF No. 57 ¶ 85; *see also* ECF No. 3 ¶ 106.)

Because the free exercise and free speech claim arises in the context of a prison, the Church's allegations must satisfy the standard set forth in *Turner v. Safley*, 482 U.S. 78 (1987).  *See Overton v. Bazzetta*, 539 U.S. 126, 132–36 (2003) (applying *Turner* to non-inmates whose rights are impacted by prison restrictions).  To sustain this claim, the Church must allege that the BOP restrictions "substantially burdened . . . [its] sincerely-held religious beliefs."  *Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007). The Church must also plausibly allege that the restrictions are not reasonably related to

5

a legitimate penological interest.[2]  *Turner*, 482 U.S. at 89 (1987); *Al-Owhali v. Holder*, 687 F.3d 1236, 1242 (10th Cir. 2010).

The Church does not explain how its ability to "teach[], preach[], and proselytiz[e]" is substantially burdened by the inmates' inability to retain the DVD in their own possession, or the obligation to comply with the donation policy.  Again, considering only this vague and conclusory statement, which the Church failed to bolster with additional factual allegations upon amendment, the Court cannot conclude that the Church's ability to provide DVDs of its Christmas service to incarcerated members is sufficiently "important to [its] free exercise of religion."  *Abdulhaseeb v. Calbone*, 600 F.3d 1301, 1316 (10th Cir. 2010) (internal quotation marks omitted).

Moreover, to withstand dismissal on a Rule 12(b)(6) motion, the Church must allege that the policy is not reasonably related to a legitimate penological interest.  *See Gee v. Pacheco*, 637 F.3d 1178, 1187 (10th Cir. 2010) (stating that, under the *Turner* standard, a plaintiff must plead "sufficient facts to indicate the plausibility that the actions of which [they] complain[] were *not* reasonably related to legitimate penological interests").  Defendants argue that the policy is related to the BOP's interest of preventing contraband from entering the prison and preserving perceptions of fairness by consistently applying rules as to the possessions permitted in the inmates' cells. (ECF No. 73 at 20–21.)

In response, the Church contends that Defendants "completely failed to provide what 'penological interest' was served" by denial of access to the DVD.  (ECF No. 80 at

---

[2] This lower standard contrasts with the strict scrutiny analysis courts typically apply to restrictions that impose a substantial burden on the exercise of religion or free speech.  *See Turner*, 482 U.S. at 89.

21.) Notwithstanding the Church's apparent attempt to shift the burden to Defendants, it does not challenge the BOP policy of preventing donation of religious items directly to inmates. (*See id.*) Rather, its only argument is that it intended that the DVD be donated directly to the chapel library as BOP policy permits. (*Id.*) This assertion, however, is contradicted by the letter the Church excerpts in the Second Amended Complaint, wherein an attorney for the inmates requests that the DVD "be released to [the inmates] immediately," so that they may "retain and view" it. (ECF No. 57 ¶ 101; ECF No. 57-1.) The Church may not now alter its pleadings in a manner contradicted by the Church's own documentary evidence referenced in the Second Amended Complaint in order to argue around Defendants' justifications.

Finally, the Church argues in its Motion to Supplement that the recent Supreme Court decision in *Roman Catholic Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63 (2020), supports its free exercise claim. (ECF No. 83-3 at 1–3.) In *Roman Catholic Diocese*, the Supreme Court granted a temporary restraining order allowing certain religious institutions to continue operations during the COVID-19 pandemic. *Roman Catholic Diocese*, 141 S. Ct. at 67–68. Specifically, it found that the restrictions that the state imposed in light of the pandemic—such as limiting attendance for services—were not narrowly tailored to a compelling governmental interest. *Id.* at 67–68. The Church contends that the BOP's donation policy similarly imposes such a restraint and is impermissible. (ECF No. 83-3 at 2–3.)

The instant case is easily distinguishable, as *Roman Catholic Diocese* was not a prison-related case and therefore restrictions were not evaluated under the *Turner* standard. *See generally Roman Catholic Diocese*, 141 S. Ct. 63. The Church fails to

7

account for this distinction, though it concedes in its Response that *Turner* governs its free speech and free exercise claims. (ECF No. 80 at 20–21.) As discussed above, the Church has not plausibly alleged that the BOP's policies imposed a substantial burden on its exercise of its religion, nor that the policies were not reasonably related to a legitimate penological interest, and therefore fails under *Turner*. *See Turner*, 482 U.S. at 89 ("Subjecting the day-to-day judgments of prison officials to an inflexible strict scrutiny analysis would seriously hamper their ability to anticipate security problems and to adopt innovative solutions to the intractable problems of prison administration."). For this reason, the Church's other supplemental authority similarly fails to alter the Court's analysis.[3]

Accordingly, as the recent Supreme Court decisions have no impact on the relevant analysis, Defendants' Motion to Dismiss is granted with respect to the free speech and free exercise claim, and this claim is dismissed.

ii.    *Establishment Clause Claim*

The Church also argues that Defendants violated the Establishment Clause by allowing inmates practicing other religions access to religious materials, whereas the Church's DVD was withheld. (ECF No. 57 ¶¶ 97–105.)

The Establishment Clause forbids the government from "confer[ring a] privileged status on any particular religious sect," or "singl[ing] out [a] bona fide faith for disadvantageous treatment." *Cutter v. Wilkinson*, 544 U.S. 709, 724 (2005).

---

[3] In its Notices of Supplemental Authority, the Church also submits *South Bay United Pentecostal Church v. Newsom*, 141 S. Ct. 716 (2021), *Dunn v. Smith*, 141 S. Ct. 725 (2021), and *Tandon v. Newsom*, 141 S. Ct. 1294 (2021) for the proposition that strict scrutiny applies to laws which burden the exercise of religion. (ECF Nos. 87, 88, 89 & 90.) None involve the relevant *Turner* standard as they are not prison-context cases.

Accordingly, the Church must allege that the BOP donation policy impermissibly prevented it from providing religious materials to inmates while allowing other religious groups to do so. *See id.*

The Church's allegations fall short of stating such a claim. The Church asserts in conclusory manner that other inmates were allowed to possess "packages pertaining to their religious beliefs." (ECF No. 57 ¶ 101.) Further, the Church alleges that the other religious items were kept in the chapel where inmates could access them, rather than remaining in the possession of individual inmates. (*Id.* ¶¶ 71–77.) However, this vague statement does not suggest that the provision of such religious materials similarly violated the donation policy. As discussed above, to the extent that the Church argues in its Response that it intended the materials to be kept in the chapel in compliance with the donation policy, the excerpted letter requesting that the DVD be provided directly to particular inmates contradicts this argument. (*Id.* ¶ 101; ECF No. 57-1.) Given its failure to allege facts suggesting that donations by other religious groups failed to comply with the BOP policy, or that the Church's donation of the DVD did indeed comply with the policy, the Church does not plausibly allege that any other religious group received preferential treatment. The Establishment Clause claim is therefore dismissed.

## C. RFRA Claims

The Church also alleges that Defendants violated its rights under RFRA by failing to provide the DVD recording to the inmates. (ECF No. 57 ¶¶ 106–15.) Specifically, the Church argues that the policy burdens the exercise of its religion because it limits the Church's ability "to minister to its congregants and members." (ECF No. 80 at 24.)

9

RFRA provides that a "[g]overnment shall not substantially burden a person's exercise of religion," unless such burden "is in furtherance of a compelling governmental interest" and "is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. §§ 2000bb-1(a), (b); *see also id.* § 2000cc-1(a) (generally prohibiting a government from imposing "a substantial burden on the religious exercise of a person residing in or confined to an institution").

To succeed on a RFRA claim, a claimant must establish that he or she "wishes to engage in (1) a religious exercise (2) motivated by a sincerely held belief, which exercise (3) is subject to a substantial burden imposed by the government." *Abdulhaseeb* 600 F.3d at 1312–13; *Hobby Lobby Stores, Inc. v. Sebelius*, 723 F.3d 1114, 1140 (10th Cir. 2013) (en banc). "The practice burdened need not be central to the adherent's belief system, but the adherent must have an honest belief that the practice is important to his free exercise of religion." *Abdulhaseeb*, 600 F.3d at 1316 (internal quotation marks omitted).

As discussed above, the Church fails to allege facts suggesting that its inability to provide the videos to the specific inmates to retain in their own possession infringes on the Church's exercise of its own religious beliefs. Moreover, as there appears to be no dispute that it would be allowed to provide the video recordings to the prison chapel for the use of *all* inmates, it again fails to explain how the restriction on providing religious materials directly to certain inmates is a substantial burden on its right to minister to its congregants. Tellingly, although given the opportunity to amend its complaint, the Church failed to provide additional factual support for its conclusory allegations.

Accordingly, Defendants' Motion to Dismiss is granted with respect to the Church's RFRA claim, and this claim is also dismissed.[4]

## D. Futility of Amendment

Dismissal of an action is a harsh remedy, and a court may in its discretion liberally grant a litigant leave to cure pleading deficiencies. *See Hall v. Bellmon*, 935 F.2d 1106, 1109–10 (10th Cir. 1991). Such leave need not be granted, however, where amendment would be futile. *See Fleming v. Coulter*, 573 F. App'x 765, 769 (10th Cir. 2014); *see also Jackson v. Jackson*, 377 F. App'x 829, 831 (10th Cir. 2010) (upholding dismissal of litigant's complaint after repeated failure to comply with court's orders to cure deficient filings).

As discussed above, the Church fails to set forth how the prohibition on donating religious materials directly to specific inmates violates its rights under the First Amendment or RFRA. The Church has already amended its Complaint twice, and it once again failed to set forth facts in its Second Amended Complaint which plausibly supported its claims. (ECF Nos. 1, 3 & 57.) The Court finds that granting leave to file yet a third amended complaint would be futile, and as a consequence it will dismiss the Second Amended Complaint with prejudice.

## IV. CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1. The Church's Motion to Supplement (ECF No. 83) is GRANTED;

---

[4] Finding that the Church fails to state a claim for violation of its rights under the First Amendment or RFRA, the Court need not reach the issues of personal and subject-matter jurisdiction, nor the distinction between individual and official capacity claims. For the same reason, the Church's supplemental authority of *Tanzin v. Tanvir*, 141 S. Ct. 485 (2020), holding that RFRA permits recovery of money damages against federal officials in their individual capacities, is also inapposite.

2. Defendants' Motion to Dismiss (ECF No. 73) is GRANTED;

3. Plaintiff's Second Amended Complaint (ECF No. 57) is DISMISSED WITH PREJUDICE;

4. The Clerk shall enter judgment in favor of Defendants E. Williams, Hugh Hurwitz, N. Morse, Jason Henderson, and John Oliver, and against Plaintiff Colorado Springs Fellowship Church;

5. Defendants shall have their costs upon the filing of a bill of costs in accordance with the procedures under Federal Rule of Civil Procedure 54(d) and D.C.COLO.LCivR 54.1; and

6. The Clerk shall terminate this case.

Dated this 27th day of May, 2021.

BY THE COURT:

_____
William J. Martinez
United States District Judge